UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARTHA JOAN WILLIAMS                                        PLAINTIFF

VS.                              CIVIL ACTION NO. 3:07CV49TSL-JCS

CAPTAIN D'S, LLC                                           DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Captain D's, LLC for summary judgment or, in the alternative, for partial summary judgment.  Plaintiff Martha Joan Williams has responded in opposition to that motion, and has separately moved to extend the expert designation deadline.  The court, having considered the parties' submissions relative to these motions, concludes that Captain D's motion for summary judgment should be denied; that plaintiff's motion to extend the expert designation deadline should be denied; and that Captain D's motion for partial summary judgment should be granted.

On February 26, 2006, plaintiff was injured when she tripped and fell at a Captain D's restaurant in Clinton, Mississippi. Plaintiff tripped on a bench in the restaurant lobby as she was walking toward a cashier to place her food order.  Plaintiff brought this premises liability action against Captain D's, alleging that the bench constituted a hazard to customers, and seeking to recover damages due to a right arm fracture she sustained in the fall, along with other damages, including damages

for a fractured left foot which plaintiff also attributes to her
fall.

Plaintiff alleges that her fall was caused when her left foot
"caught" on the right front leg of a bench in the lobby area of
the restaurant.  She contends that Captain D's was negligent in
locating the bench in an area where customers were likely to walk
but where the view was obstructed so that it could readily be seen
by customers entering the restaurant and approaching the menu
board/cashier area.  In support of its motion for summary
judgment, Captain D's has presented photographs which it contends
clearly show that the bench was not hidden or concealed in any
fashion, but rather was open and obvious; testimony from
restaurant employees that they were not aware of any other
customer ever having tripped on the bench or complained about the
location of the bench; testimony from the plaintiff herself that
she had been in the restaurant on previous occasions and was aware
of the presence of the bench; and testimony from plaintiff that
she was not aware of the specific location of the bench prior to
her fall.  It submits that in light of this proof, plaintiff
cannot sustain her burden to show either that (1) Captain D's
created a hazardous condition which caused her injury; or that
(2) a third party caused a condition which existed for such a
length of time that Captain D's had either actual or constructive
knowledge of same.  See Jerry Lee's Grocery, Inc. v. Thompson, 528
So. 2d 293 (Miss. 1988) (holding that to prove that the business

2

operator was negligent, the plaintiff must show either (1) the operator caused the dangerous condition, or (2) where a third person unconnected with the store's operation caused the condition, that the operator had actual or constructive knowledge of the condition).  In the court's opinion, however, there are genuine issues of material fact as to whether the bench constituted a dangerous condition and as to the "openness and obviousness" of the bench.  See Lawrence v. Wright, 922 So. 2d 1, 2 (Miss. Ct. App. 2004) (stating that "if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger").  Accordingly, Captain D's motion for summary judgment will be denied.

Captain D's has moved in the alternative for partial summary judgment as to plaintiff's claim that her left foot was injured as a proximate result of the trip and fall incident, arguing that plaintiff has no evidence to support this allegation.  In filing this motion, Captain D's pointed out that plaintiff experienced no pain with her foot after the fall, that she made no complaint to the emergency room physician after the fall, and that in fact, she sought no treatment for any injury to her foot until approximately April 20, 2006, well over two months after the accident.  It argued that, particularly in light of these facts, plaintiff require expert testimony to establish medical causation, cf. Cole v. Superior Coach Corp., 106 So. 2d 71, 72 (Miss. 1958)(holding

3

that in workers' compensation context, expert testimony is needed
to establish medical causation in all but simple and routine
cases), and yet because plaintiff's medical records from her
treating physicians do not link the foot injury to the fall at
Captain D's and because plaintiff has failed to designate any
medical witness in this cause, she cannot prove the foot injury
was caused by the fall at Captain D's.

     In plaintiff's response to defendant's motion, filed January
29, plaintiff argued that defendant's alternative motion for
partial summary judgment on her claim for damages for the foot
injury was premature because one of her "key medical witnesses,"
Dr. Penny Lawin, had not yet been deposed.  Dr. Lawin was one of
plaintiff's treating physicians, and by agreement of the parties,
she, along with another of plaintiff's treating physicians, Dr.
Felix Savoie, were to be deposed on February 28, 2008,
notwithstanding that the December 10, 2007 deadline for completion
for discovery had passed.  Plaintiff asked that the motion for
partial summary judgment be stayed pending completion of those
depositions.  She also moved, contemporaneously, to extend the
September 10, 2007 deadline for designation of experts, stating,
without elaboration, that "[d]ue to developments in the case over
recent months," she was in need of "designating an expert in order
to fully prepare her case for trial."  She asked to be allowed to
designate "up to two experts" by a date certain.  Defendant filed
its response opposing plaintiff's motion, suggesting that the

4

"recent developments" which prompted plaintiff's request for an extension was its pending motion for summary judgment.  By order dated February 27, Magistrate Judge Sumner denied plaintiff's motion, but noted that the parties could conduct the out-of-time depositions to which they had previously agreed.

On March 10, following Dr. Lawin's deposition, plaintiff filed a supplemental response to defendant's motion for partial summary judgment, in which she argued that Dr. Lawin's deposition testimony "clearly establishes and/or emphasizes genuine fact issues as to the foot injury."  At the same time, she filed an "Amended Motion to Extend the Expert Designation Deadline And/Or In the Alternative Objection to Magistrate Judge's Ruling, Pursuant to Rule 72."  In that motion, plaintiff requested that she be permitted to designate Dr. Lawin and Dr. Savoie as medical experts in the case.

According to plaintiff's interpretation, Dr. Lawin's deposition testimony "has either created or brought into sharper relief," genuine issues as to the foot injury, and in particular as to the cause of the foot injury and the age of the foot injury. Plaintiff submits that in light of this testimony, there are genuine issues of material fact that prevent summary judgment on the foot injury.  She argues further that she does not need a medical expert to establish causation, but that if the court concludes that she does, the court, in light of the importance of Dr. Lawin's deposition testimony on the causation issue and the

absence of prejudice to defendant, should allow her to designate Dr. Lawin and Dr. Savoie as medical experts, notwithstanding the deadline for designation of experts having passed. The court is not persuaded on any of these points.

Medical records offered by defendant in support of its motion for summary judgment reflect that plaintiff was first seen by Dr. Lawin on May 1, 2006, having been referred by Dr. Savoie. At that time, plaintiff completed a medical history form on which, in response to the inquiry, "Please describe how you were injured or what type of problems you are having now," plaintiff wrote, "not injured – arthritis." Dr. Lawin also took an oral history from Ms. Lawin, in which plaintiff indicated to Dr. Lawin that the pain and swelling in her foot had begun about four weeks earlier, and reported that she had no history of trauma. Dr. Lawin found what appeared to be a navicular fracture on X-rays of plaintiff's foot. Her impression was that plaintiff's injury was "[p]robably start of Charcot arthropathy versus acute navicular fracture." Charcot's arthropathy is a complication of diabetic neuropathy; due to the neuropathy, the bones in the foot become weakened and fractured without major trauma.

Plaintiff was again seen by Dr. Lawin on May 22, 2006, at which time Dr. Lawin's impression continued to be "probable start of Charcot arthropathy versus subacute navicular fracture." Plaintiff remained under Dr. Lawin's care relating to the foot injury for a year or more and yet there is nothing in the medical

6

records to indicate that Dr. Lawin ever linked plaintiff's foot injury to the fall at Captain D's, or to any trauma to her foot. Rather, Dr. Lawin's opinion, as reflected in her medical records, was that the fracture was probably the start of Charcot arthropathy.

Plaintiff claims that despite what Dr. Lawin recorded in plaintiff's medical records as to her impression that plaintiff's foot injury was due to Charcot arthropathy, Dr. Lawin's deposition testimony, considered along with plaintiff's own version of events, supports a conclusion that the foot injury was instead caused by plaintiff's fall at Captain D's. Plaintiff points out that although Dr. Lawin testified that a person with plaintiff's medical conditions (i.e., diabetic neuropathy) could suffer a fracture to her foot without any trauma at all, she also testified that trauma is a possible cause of the kind of injury suffered by plaintiff. She points out, moreover, that although Dr. Lawin could not say specifically when plaintiff's injury probably occurred, she did say that plaintiff's injury was a "subacute" navicular fracture, meaning it occurred at least more than ten days before plaintiff presented for treatment.[1]  Finally, she

_____

[1]     On this subject, Dr. Lawin testified:

A.  Subacute is a fracture that is not within what we call an acute.  A navicular subacute is more than a few weeks.  Acute fracture for that particular bone would be within a couple of weeks, seven to days, ideally.

Q.  When you say, "more than a few weeks," is there any way

notes that Dr. Lawin testified that people suffering from diabetes, like plaintiff, tend to develop neuropathy, and such people do not have normal pain sensitivity; thus, plaintiff might not have been able to feel pain like a person without diabetes would have.

From all this testimony, plaintiff reasons that if an injury like hers could have been caused without any trauma, then certainly, a "definite event of trauma" such as that she suffered at Captain D's, "would stand as a clear point at which the injury would have been suffered."  She submits that Dr. Lawin's testimony as to how the injury could have occurred, coupled with her own testimony as to when the injury occurred, establishes a genuine issue of material fact as to the cause of the foot injury.  She claims further that Dr. Lawin's testimony confirms that the fracture occurred <u>at least</u> more than a couple of weeks, and possibly several weeks or months, before she was seen and treated; and her further testimony that plaintiff probably would not have felt pain in her foot as would a person without diabetes, explains plaintiff's delay in seeking medical treatment and undermines defendant's argument that the existence of a causal link is belied

to know how much more than a few weeks.

A.  Unfortunately not, after than seven to ten day period.

Q.  How long could it be beyond that seven to ten days?

A.  It could be months or years.

by the passage of time between plaintiff's fall at Captain D's and
her seeking medical treatment for the foot injury.

Notwithstanding plaintiff's argument to the contrary, it is
clear to the court that with or without Dr. Lawin's deposition
testimony, plaintiff cannot show, by a preponderance of the
evidence, that her foot injury was proximately caused by her fall
at Captain D's.  Dr. Lawin testified only that plaintiff's injury
could have existed for months or even years prior to her rendering
treatment in May of 2006, and that plaintiff's diabetic neuropathy
could have made it difficult for plaintiff to feel pain from the
foot fracture.  This testimony does not causally link the foot
fracture to plaintiff's fall at Captain D's.  Dr. Lawin otherwise
testified that plaintiff's foot fracture could have been caused by
some trauma; but she also testified that plaintiff's foot fracture
could have occurred with no trauma at all.  Furthermore, while
plaintiff may not have been able to detect the fracture right away
due to diabetic neuropathy, plaintiff told Dr. Lawin that she had
not experienced any trauma to her foot.

Of course the court recognizes it is possible that
plaintiff's foot injury was caused by the fall at Captain D's.
However, it is plaintiff's burden to prove by a preponderance of
the evidence, i.e., that it is more likely than not, that the fall
was the cause of this injury.  She lacks sufficient proof to
sustain this burden, and therefore, the court concludes that

defendant's motion for partial summary judgment as to the left foot injury should be granted.

Given the court's conclusion that plaintiff cannot prevail on her claim even were Dr. Lawin permitted to testify as an expert, her motion to designate Dr. Lawin and Dr. Savoie out of time is effectively moot, and will be denied for that reason.[2]

Accordingly, it is ordered that defendant's motion for summary judgment is denied; its motion for partial summary judgment is granted; and plaintiff's motion to extend the expert designation deadline is denied.

SO ORDERED this 11th day of April, 2008.


                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE

_____

[2]    As to plaintiff's objection to the magistrate judge's denial of her original motion to extend the deadline for designation of experts, the court notes that the magistrate judge could hardly have erred in denying plaintiff's motion, given that in her motion for late designation of experts, plaintiff did not state the area of expertise in which she professed to need an expert or identify the expert/experts she wished to designate, nor did she explain the nature of the claimed "developments in the case over recent months" which precipitated her need to designate experts.  The magistrate judge correctly surmised that she was desirous of designating medical experts, but even then, he could not have known from plaintiff's submission that the experts plaintiff wished to designate were her treating physicians, Dr. Lawin and Dr. Savoie.  Without such knowledge, he could not have erred in denying her motion, and even had he known that, his decision to deny the motion would not have been clearly erroneous or contrary to law.